Simon, J.
delivered the opinion of the court.
Hicolas Girod, one of the oldest and wealthiest'inhabitants of the city of New Orleans,-died on'the first of-September, 1840; his succession was supposed to be intestate, and accordingly two of his nearest relations and heirs were appointed the curators thereof. Some short time afterwards, an olographic testament was found, dated the 23d of December, 1837, to which wére annexed a certain number of Ions, or written obligations in favor of the persons whom he had named in his will as his particular legatees for the several sums therein mentioned, amounting altogether to $710,000 ; but the testator had failed to appoint any testamentary executor.
*608 On the 23dof January, 1841, Jean Frangois Girod presented a petition to the court of probates, in which he represented that he had been informed that the deceased’s will would soon be offered for probate ; that it would be necessary to appoint one or more dative testamentary executors to the same, and that being an applicant for the said appointment, he would, if appointed, furnish the security required by law; he also averred, that with the exception of his brother, Pierre Nicolas Girod, whose rights were equal to his own, he was the nearest relative to the testator, and entitled to a greater portion of his estate than any other person. On the 25th of the same month, Wm. Freret, mayor of the city of New Orleans, and Denis Prieur, two of the lega[397] tees, made application to the court of probates for the purpose of having the said will admitted to probate and ordered to be executed, and prayed in their petition to be appointed dative testamentary executors with the seizin of the succession. On the same day two petitions were presented to the probate court by Aimé Guillet and Adelin Dreux, representing themselves to be entirely disinterested in the succession, and praying also to be appointed dative testamentary executors. On the 30th, William Freret and Denis Prieur renewed their application for the appointment of dative testamentary executors; and Pierre Nicolas Girod filed his petition for the same purpose, being one of the legal heirs of the deceased; and on the same day the judge a quo, conceiving that he had a right under the art. 1671 of the Louisiana Oode, to appoint dative testamentary executors ex parte and ex officio ; whence,, "s he says, it follows that he, the judge, has the free exercise of a discretionary power without regard to the rules of preference laid down for the choice of curators; and believing that the exercise of spch discretionary power did not admit of any discussion before him among the ccmdidates for the trust, whom, therefore, he did not think proper to hear contradictorily; ordered that Aimé Guillet and Adelin Dreux be appointed joint dative testamentary executors of the last will of the deceased, on their complying with the requisites of the law. From this judgment, Jean F. Girod, William Freret and Denis Prieur appealed.
We have very lately had occasion, on a rule for a mandamus, and supposing the power of appointment of dative testamentary executor to be discretionary under the art. 1671 of the La. Oode, to express our opinion on the nature and extent 'of the discretionary power given by law to the inferior judge, which he had even assumed and carried so far as to refuse an appeal to this court from the judgment now under consideration; and in accordance with the doctrine repeatedly recognized in our jurisprudence, we again held that it was within the province of the supreme court to inquire into the man-[398] ner in which the judge a quo exercised the discretion (a sound and legal-one) committed to him, whenever the party appeal's thereby to suffer an irreparable injury. But the question now presents itself whether under the law above quoted, and others on the same subject, it is true that the power or right of appointing dative testamentary executors is really and exclmvoety within the discretion of courts of probate, and that those courts are not to be governed by any of those rules which give to applicants for the same appointment a right of preference over each other 1 or in other words, has the *609 judge of probates the power of selecting and ex parte appointing whomsoe ver lie pleases as dative testamentary executor ?
The art. 1671 of the La. Oode, relied upon by the appellees, and by virtue of which the inferior judge appears to have made the appointment in qnes ■ tion, is in these words: “if the testator has omitted to name a testamentary executor, or if the one named refuses to accept, the judge shall appoint one ex officio.” This Jaw gives clearly to the judge the power of appointing a dative testamentary executor, whenever it becomes necessary to do so in the oases therein pointed out, but we cannot construe its meaning in a more extensive sense than as merely conferring upon him a faculty which he is to exercise according to law; and if so, how can it be pretended that it gives him the power of appointing any one at his pleasure, and of disregarding the rights of those who had laid before Mm their applications, and who had shown themselves entitled to be preferred to others in obtaining the appointment. This would be more than the exercise of a mere legal discretion; it would be the action of an arbitrary power which the law has never had in contemplation, and which our courts ought not to sanction.
This construction of the law leads us to the inquiry, whether among the applicants any of them is entitled to a preference over the others; and whether the judge a quo could, in exercising the legal discretion vested in him by law, appoint persons who are strangers in interest to the succession, whilst there were other applicants having an interest in it, as heirs or legatees ? [399] By the art. 924, sects. 7 and 8 of the Code of Practice, courts of probate have the power “ to appoint administrators under the will, when the executor appointed by. the testator will not or cannot perform the duties, or is dead or absent; and to remove or supply the places of such tutors, curators and testamentary executors, in the cases provided by law.” These provisions, which ought to be construed with reference to the art. 1671, show the extent of what the lower judge calls his discretionary power, which is nothing more than the right or faculty of appointing, and demonstrate clearly the true intention of the legislature. The sole object, of the lawmaker was merely to provide for the administration of testamentary successions, where the testator has failed to name an executor, or where the one appointed in the will refuses to accept, is dead or absent, or has been removed from office; in such cases, the person who is appointed by the judge ex officio (which expressions ex officio, are only used in contradistinction to those appointments which are made by the judge with the advice of a family meeting or of a meeting of creditors); acts as administrator under the will, or is otherwise called dative testamentary executor ; the name is immaterial, as the law indicates sufficiently their powers and duties, which under both provisions are purely those of an administrator.
It is important and proper to remark here, that although the succession of Nicolas ©rod.is a testamentary one, yet his legal heirs being entitled to the benefit of inventory, Ms estate will necessarily be subject to be administered under such benefit, according to the rules'and in the manner provided for by law for the administration of such successions. La. Oode, art. 971. Therefore, the administrator under the will, or otherwise called dative testa^ *610 mentary executor, will unite the powers and duties of both, under the control and superintendence of the court of probates. If it be true that the heirs of the deceased are entitled to the benefit of inventory, they cannot be deprived of the right of administering the succession according to the rules con-[400] tained in the articles of the Oode relative to this subject; and if so, under the article 1085: “ the preference, in the choice of the administrator, must be given to the beneficiary heir over every other person ; ” and according to the article 1039, “ if there be neither beneficiary heir, &c., &c., who will or can accept the administration, or give the necessary securities, it shall be given to one or two of the creditors, whom the judge shall choose, &c.” The heirs of the testator have, therefore, a particular interest in the good administration of the testamentary succession of Nicolas Girod, and we are unable to perceive any valid reason why the circumstance of there being a will, the object of which is merely to make certain legacies which are to be paid out of the estate, and which are to become the debts of the heirs, if they accept, should alter their situation, and should have the effect of divesting them of their legal- right to obtain' the administration of the estate; whether it be under the denomination of administrator, or of that of dative testamentary executor; the formalities to be observed, and the responsibilities and securities to which they are subjected, are the same; their interest is also the same, and ubi eadem est ratio, eadem est lex. We think, therefore, that the heirs of the testator ought to be entitled to exercise the same right of preference in this case over any other person in the appointment of a dative testamentary executor, as is allowed to them by law in the cases of vacant estates, or of successions taken with the benefit of inventory.
But it has been -urged that if the heirs wex-e to obtain the appointment, they would be interested in not executing the will, or at least in delaying, the payment of the legacies: this argument would as well apply to the heir who claims the administration of a vacant estate, or of a succession taken under the benefit of inventory, and yet, in'those cases, the law gives them-a positive right of preference. La. Oode, arts. 1035, 1114. The heir would be as much interested in not paying the debts of such estates, as in not paying the legacies of a testamentary succession: hut in all these administrations, the law has provided against the infidelity of the administrators, by requiring [401] them to give security; and in this particular case, the security must be given in the same manner as curators of vacant successions. La. Oode, art. 1672. Generally speaking, there would certainly be as much danger, if not more, in putting the estate in the hands of disinterested strangers, as there is in permitting the heirs, or any one of them, to manage their own affairs; nay, it is obvious that, unless excluded by law, they should have the preference.
With this view of the question, we must conclude that, as the record contains evidence that one of the appellants, -Jean Francois Girod, is a near relation and one of the heirs of the testator; and that the other applicants, William Freret and Denis Prieur, are legatees, and, therefore, creditors, of the ■ estate; the judge a quo erred in disregarding their applications, in refusing to diear them contradictorily with the appellees, and in making the exponte ap *611 pointment of persons who have not shown themselves in any manner legally entitled to the trust, in preference to the appellants. The appointment complained of must therefore he annulled and set aside.
We must not be understood, however, as meaning or intimating that the mayor of the city of New Orleans, who, as trustee, is to receive the legacy contained in the testator’s will for the purposes therein mentioned, will, by virtue of the said legacy, he entitled to any right of preference as a legatee or creditor of the estate; this right properly belongs to the legatees for whose personal benefit the dispositions are made, and who are therefore directly interested in the good administration of the succession. We do not think that any municipal officer, or any other person who is to receive a legacy in trust for others, has any more right of preference in the appointment of a dative testamentary executor than the agent of any creditor, or any other stranger, may have.
A last question has occurred, whether it is necessary to give public notice of the applications made for the appointment of dative testamentary executor : the law is silent upon this subject, hut we are inclined to believe, according to the principles above established, that, as-this kind of administra- [402] tion is in every respect to be assimilated to that of curator or administrator, it is equally proper that notice should he given to all those who may wish to make opposition thereto; the reasons are the same, and this requisite will he in accordance with the true object of the law. We are, therefore, of opinion that in all cases of administrators of successions, of whatever denomination, to be appointed by courts of probates, public notice of the applications should he given in the manner pointed out in the articles 1106,1107 and following, of the Louisiana Code, or in any other law relative to the same subject.
It is therefore ordered, adjudged and decreed, that the judgment of the court of probates he annulled, avoided and reversed; and that this case be remanded for further proceedings according to law, with instructions to the judge a guo to proceed to the appointment of one or more dative testamentary executors of the last will and testament of Nicolas G-irod, deceased, under the legal principles and rules above laid down; the appellees paying the costs of this appeal.