## No. 10,093.

### ARMAND HEINE ET AL. VS. EDWIN · T. MERRICK ET ALS.

1. In an injunction suit, if the facts alleged are found to be true; if the legal rights claimed flow from a correct application of the law to those facts, and if the plaintiffs had grounds to apprehend that defendants would impede or hinder them in the exercise of those rights—the injunction was properly issued and should be maintained.

2. The right granted to one co-proprietor of a wall in common, by C. C. Art. 682, to demolish the old wall when found insufficient to bear the additional height and weight of a proposed new structure, and to build a new and thicker wall adequate to support the new building as well as that of the neighbor, at his own expense, and taking the additional thickness from his own estate, is an absolute right and not subordinated to any condition of previous consent by the neighbor.

3. The provisions of R. C. C. Art. 685 requiring the consent of the co-proprietor or a decision of judicial experts in certain cases do not apply to the case arising under Articles 681 and 682.

4. The right to build the new and thicker wall involves and includes the right to demolish the old wall, to establish a sufficient foundation for the new one, to disturb the neighbor's enjoyment, and to enter upon his property to the extent necessary for the exercise of the principal right. *Ubi aliquid conceditur, conceditur et id sine quo res ipsa esse non potest.*

5. No law forbids an owner from erecting one building on two lots; and although his old building rested only on one lot, yet if he proposes to erect a new one on two lots, he may do so, and may rest it on the old wall if sufficient, or may demolish it and build a thicker one, according to Art. 682.

6. The provision of C. C. 675 restricting the right of one co-proprietor to rest a wall in common more than nine inches on the land of his neighbor, applies to the wall itself and not to its foundation, which, in this city, must necessarily be wider than the wall.

7. The right to build a thicker wall under Art. 682, includes the right to rest it on the centre of a sufficient foundation, and although the additional thickness of the wall itself must be taken from his own soil, the foundation must necessarily extend equally on each side from the centre of the wall.

8. The concluding proviso of Art. 684 is an obvious mistranslation of the French Article intended to be reproduced, and, as it stands, makes the whole article meaningless and absurd. The necessity of correcting the error has been heretofore noticed by this Court. Murrell vs. Fowler, 3 Ann. 166.

9. The requirement of Art. 675 that the wall in common should be built in stone or brick, applies only to the wall and its foundation proper, and does not forbid the use of heavy timbers to make a firm and smooth basis on which to build the brick foundation, any more than it would apply to wooden piles driven for the same purpose.

10. When one proprietor exercises the right granted by Art. 682, his neighbor is bound to bear, without indemnity, the inconvenience and injury consequent thereon so far as they are inseparable from the exercise of the right. *Neminem lædit qui jure suo utitur.*

11. On the other hand, the proprietor who exercises the right is bound for every exaggeration of these necessary damages which he could, by diligence, have averted. He is bound to reduce to a *minimum* the injury and inconvenience occasioned to his neighbor; to occupy his property to the least extent and for the shortest time consistent with the exercise of his right; and to hasten, by all practicable means, the completion of the work and the restoration of his neighbor to the full enjoyment of his own.

12. He is, moreover, bound, at his peril, to replace the neighbor, at the end of the work, in a position every way equal to that which he occupied at its beginning, and to furnish him a new wall fit and adequate to support his building.

13. For all shortcomings in these respects the neighbor is entitled to fair and full reparation in damages.

A PPEAL from the Civil District Court for the Parish of Orleans.
   *Voorhies, J.*

### *Chas. E. Schmidt* for Plaintiffs and Appellants:

1. One of the owners of a party wall, or wall in common, has the right, if he desires to put up, on his own ground, a new and higher structure, which the wall would be inadequate to support, to tear down the wall and build one, in its stead, both higher and thicker, taking the additional thickness from his property. C. C. 582 (678). This he can do without the consent of his neighbor, co-owner of the wall, but in so doing must proceed with due care and attention. Peirce vs. Musson, 17 L. 294; Dorville vs. Amat, 6 Ann. 566; Gettwerth vs. Hedden, 30 Ann. 30.

2. He has the right to enter on the neighbor's premises for the raising or reconstruction of the wall, to deposit materials there and do such work as may be proper or necessary. Duranton, Vol. V, No. 316; Pardessus, Serv., Vol. I, No. 227. As to how far such a right may be claimed, when the wall is not a common one, see Demolombe, Vol. XI, Nos. 421, 422, 434.

3. If the neighbor refuses to allow him to take down and rebuild the wall, and threatens to prevent his so doing, he is not bound to bring suit against him to obtain the prior authorization of a Court of Justice, but may at once apply to a competent tribunal for a writ of injunction forbidding the neighbor to interfere with him in the proper exercise of his legal right. C. P. Art. 296.

4. The writ of injunction issues on the principle of a clear and certain right to the enjoyment of the subject in question, and an injurious interruption of that right which, on just and equitable grounds, ought to be prevented. Hilliard on Injunctions, 19.

5. That writ may issue, both in its prohibitory and mandatory forms, to either prevent, or forthwith remove, the obstruction to the exercise of a legal servitude. 7 R. 442; 31 Ann. 497.

6. There is in Louisiana no law entitling one to such prompt or summary provisional proceedings in like cases, as are provided by Arts. 806 to 811 of the French Code of Practice; and nothing justifies the judicial importation into our legal system of so-called analogous but much slower, proceedings *via ordinaria*, which would virtually render the exercise of the right so tardy as to make it nugatory.

7. When one of the owners of the wall in common rebuilds it anew entirely, taking the extra thickness from his own ground, he is at liberty to make it support any structure on his side, no matter how much wider it may be than his former building which rested on the old party wall, provided the new wall is adequate to hold the new building. The very purpose of the law, in requiring the reconstruction of the wall entirely anew in the manner it indicates, is to compel the reconstructer to furnish, at his own expense, and by the additional use of his own ground, the excess of carrying power necessitated by the new structure, so as to prevent any impairment of the neighbor's right of servitude in the party wall; and when the law's provisions in that regard are complied with, there can be no pretext for holding that such new structure, because wider than the old one, aggravates, in any manner, the neighbor's right of servitude.

8. The ownership of a wall in common is not subject, as to its effects, to the rules governing the co-ownership of an undivided thing, on which neither co-partner can make any innovation without the consent of the other. Either of the owners of the wall has the right of obtaining from it all the benefits it may yield in conformity with its usual destination, even though it should become necessary to make innovations and alterations in the wall, such, for instance, as raising it, or building upon it, etc. Demolombe, Vol. XI, No. 310.

9. Indeed, the party who has put up the new higher and thicker wall, is considered as the sole owner of so much of the wall as exceeds the former one in height and thickness. Marcadé on Art. 659, C. N.

10. When the law imposes upon him for whose needs a higher and thicker wall is required, the obligation of rebuilding the wall anew, it evidently requires the new wall to be built on the neighbor's side on the very same line to which the old wall extended. Such higher and thicker wall necessitating broader foundations than the former one, those foundations must extend, on either side, to an equal distance from the centre of the wall; otherwise, as admitted by all the experts in this case, the centre of gravity of the wall would not be the same with that of its foundation, and the wall would not stand. Hence, the necessity of projecting the foundations of the new and larger wall further on the neighbor's soil than the distance to which those of the old and smaller wall extended. "He to whom a servitude is due, has the right to make all the works necessary to use and preserve the same." C. C., Art. 772 (768). *Ubi aliquid conceditur, conceditur et id sine quo res ipsa esse non potest.*

11. By foundations are meant the masonry or brick-work laid in the ground up to the first or ground floor, for the purpose of resting a structure thereon. Rendu, Dictionnaire des Constructions No. 2125.

12. The foundations of a building must be proportioned to its nature, to the use to be made of it, and to the quality of the soil. *Ib.* No. 2126.

13. As was said in Murrell vs. Fowler, 2 Ann. 166: "It is an obvious fact that a high wall cannot be erected on the line of a lot on our alluvial soil without the projection of the foundation on the adjacent land," And the law compelling him who rebuilds the wall to erect it on that line, it is equally obvious that no indemnity for such projection can be claimed or allowed.

14. Article 684 (680), C. C., which provides how a man whose property adjoins a wall, built either half on his ground or entirely on his neighbor's, may make it a wall in common, has been correctly translated from the French text of the Code of 1825, in so far as relates to its last part, viz: "If the person who has built the wall has laid the foundation entirely upon his own estate." For, this would require the extremity of the base of the

Heine et al. vs. Merrick et als.

foundation to reach the neighbor's line, while the wall itself would therefore be some two or three feet distant from the line, and would not, consequently, adjoin the neighbor's lot. The French text is a literal transcript of Art. 661, C. N., with the addition of the words " *si celui qui a fait le mur l'a fait porter entièrement sur son héritage*," i. e., " if the one who has built the wall has made it ( the wall, not the foundation) bear entirely on his own land," an addition rendered necessary by the fact that the French Code does not, like ours, give the right of placing one-half on the boundary wall of a town lot on the adjoining neighbor's lot. See 11 Ann. 467. This mistranslation was noticed in Murrell vs. Fowler, 3 Ann. 166.

15. He who exercises a legal right, *qui jure suo utitur*, cannot be responsible to his neighbor for the natural consequences thereof. Thus, if in lawfully taking down and rebuilding a wall in common, his neighbor is thereby subjected to inconvenience and the diminution or the loss of rents, he is not liable therefor in damages to him, unless he should fail to take such precautions as are usual to protect the neighbor's house from unnecessary injury, or should delay the reconstruction of the wall beyond the time reasonably required to set it up properly. Demolombe, Vol. XI, No. 406; Aubry vs. Rau, Vol. 2, 4th edition, § 222, p. 427, and, in fact, nearly all the authors, as Laurent (Vol. 7, No. 561, q. 645), who is of a contrary opinion, admits.

16. Even though the tenant of the neighbor became, owing to the reconstruction of the wall, entitled to a reduction of the rent, or even to an annulment of the lease, the party rebuilding the wall would not be liable for the loss thereby occasioned to the neighbor. Demolombe, Aubry & Rau *(loc. cit.)*; Dorville vs. Amat, 6 Ann. 566; Gettwerth vs. Hedden, 30 Ann. 30.

17. The French text of the Article 673 of the Code of 1825 is taken from the Napoleon Code. It is as follows: "Tout mur servant de séparation entre bâtiments *jusqu'à l'héberge*, ou entre cours et jardins, etc., sera présumé mitoyen, s'il n'y a preuve, titre ou marque du contraire." This was incorrectly translated into English (and the error was not corrected in the present Article 677) as follows: "Every wall being a separation between buildings as high *as the upper part of the first story,* ⚹ ⚹ ⚹ shall be presumed to be in common if there be no title, etc., to the contrary." The obvious mistake in the translation is in regard to the word *l'héberge*, which might have been translated "the upper part of the *last* story," but certainly not of the *first* story, if we begin the counting of the stories from the ground. This is evident from the definition of the word *l'héberge*, clearly given by Rogron, in his notes on Article 653, C. N., as follows:

" *L'héberge*—This is the name given to the place where two buildings established on the same wall begin to separate, or, in other terms, the highest point of the lower roof. *Héberge* signifies in our ancient language, *cover, shelter*. The owner of the less elevated building had no interest in building beyond the height of his own structure, the surplus therefore belongs to the neighbor."

18. On the 23d July, 1883 — a few days before the restoration of their building — the defendants filed their *second* reconventional demand, complaining, *inter alia*, that plaintiff's building encroached with its ornamental front several inches on the sidewalk, to their injury, and that of the public generally. This complaint is made, although defendants' own building encroaches still more on the sidewalk than plaintiffs'. If defendants thought they would have been injured by such projections, the law indicated the remedy. C. C. Arts. 857, 858. Having neglected to make timely opposition, they cannot now ask the destruction of the work. C. C. 862. Besides, *malitiis non est indulgendum*.

## *Merrick & Merrick* for Defendants and Appellees:

1. Ownership is the right by which a thing belongs to some one in particular to the exclusion of all others. C. C. Art. 488 (480).

2. The right of servitude to rest a wall in common nine inches on the property of an urban

neighbor being in derogation of the right of ownership is *stricti juris*. Hoggatt vs. Railway Co., 34 Ann. 627; McIntosh vs, Duncan, 12 Ann. 787; C. C. 765.

3. He who builds above or below his soil adjoining the property of his neighbor is bound to build in a perpendicular line. C. C. Art. 673 (669). *Cujus est solus ejus est ab inferno usque ad coelum.*

4. The right to use the property of an urban neighbor is limited (among things) by the proviso that the whole thickness of the wall shall not "exceed eighteen inches," not "including plastering." C. C. Art. 675.

5. This property of another to the extent of nine inches wide, the length of the wall condemned to servitude, is only condemned to bear so much and no more burden than it is capable of sustaining.

If a party wishes to build a wall of a weight beyond the capacity of that quantity of soil to sustain he must build on his own land, or bargain with his neighbor for an additional servitude on his neighbor's land. C. C. Art. 684. The taking of four feet of the neighbor's land, against his consent for this purpose, is a trespass.

6. The party claiming the right to rest his wall nine inches on his neighbor's land cannot in violation of another condition of the article put two feet or twenty-five inches wood work in his wall as a foundation. Nor can he put one foot two inches of wood foundation where three or four inches in thickness of plank would make a better surface for the brick work. C. C. 675.

7. Where a building of unusual magnitude sinks so as actually to wreck the two adjoining buildings, the opinions of experts as to the goodness of the foundation of the walls will be of no avail to relieve the owner from responsibility. Parties who do not take the usual precautions to guard against damage to adjoining proprietors have no claim to appeal to courts of justice to be relieved from the consequences of their own wilfulness and folly.

---

The opinion of the Court was delivered by

Fenner, J. Plaintiffs and defendants are owners of contiguous properties on Canal street in this city which were separated by a wall in common.

Plaintiffs, having entered into a contract with the Pickwick Club to erect for its use as lessee the splendid structure which now exists at the corner of Canal and Carondelet streets, found the existing party wall insufficient to support the increased height and weight of their proposed new building, and that its demolition and reconstruction would be necessary. This, of course, involved an invasion of the property of defendants and a disturbance of their enjoyment.

Sundry interviews took place between the parties, having in view an amicable adjustment of their respective rights, concerning the precise tenor of which the testimony is contradictory. Without discussing these contradictions, suffice it to say that the interviews resulted in an entire failure to reach any agreement; that the defendants made sundry claims to compensation, which were disallowed; that their consent to plaintiffs' entry upon their premises was not given; that plaintiffs' right to make such entry, without consent, was not acknowledged; and that

plaintiffs had reasonable grounds to apprehend that any attempt to make such entry would be met by resistance, either physical or legal.

Under these circumstances and under the pressure of their important contract with the Pickwick Club, which did not brook delay, plaintiffs resorted to the present suit for an injunction.

In their petition they set forth substantially the existence of the old party wall; their intention and contract to erect on their property a larger and higher structure; the insufficiency of the old wall to sustain such structure; their legal right to demolish it and to erect in its stead a new, stronger and thicker wall, capable of supporting both their own and the building of the defendants, the same to be built at their own expense, and the additional thickness thereof to be taken from their own soil; the necessity of entering upon defendants' premises in order to demolish the old wall, to build the new one, and to excavate for the purpose of laying a sufficient foundation; the refusal of defendants to consent to or permit such entry, and their threats to resist it without indemnity previously agreed upon and paid; the injury which would result to them from being impeded in the exercise of their legal rights; and on these allegations they applied for and obtained an injunction restraining defendants "from impeding or obstructing the petitioners in the demolition of the party wall  *  *  and in the putting up of a new wall of sufficient strength to support petitioners' new structure and the building No. 142 Canal street, and from interfering with the petitioners or their agents and workmen in going upon the premises No. 142 Canal street to make the necessary excavation for the new foundation to be laid for said wall and for putting up the proper shoring and weatherboarding and doing such other work as may be necessary for the support and protection of the building No. 142 Canal street during the process of demolition and reconstruction of said wall."

Defendants answered putting at issue plaintiffs' right to the injunction, and also made a claim in reconvention.

This reconventional demand has been enlarged by several supplemental petitions. All the matters were tried together and resulted in a judgment dissolving the injunction and rejecting plaintiffs' demand, and in favor of defendants on their reconventional demand in the sum of four thousand dollars, as actual damages with a non-suit as to their claims for prospective damages.

From this judgment the plaintiffs have appealed, and the defendants have filed answer in this court asking for an increase of damages and additional relief.

We will consider, first, the judgment on plaintiffs' demand for injunction; second, that on the reconventional demands.

## I.

We are unable to agree with the learned defendants in their views as to the scope and operation of the injunction applied for by plaintiffs. They seem to regard it as having effect absolutely to seal their lips and to tie their hands, and to authorize the plaintiffs, as long as it remained in force, to enter upon their property and there to do whatever it pleases them according to their own sweet will.

If this were correct, of course, such an injunction would have been an outrage and the propriety of its dissolution could not be questioned.

But from the careful analysis above made of the averments of the petition and the terms of the injunction, it fully appears that plaintiffs simply asserted their legal right, upon the facts alleged and the law applicable thereto, first to demolish the old wall; second, to erect, in its stead, a new wall having sufficient strength and thickness to support both their new structure and that of defendants, the same to be built at their own expense and the additional thickness to be taken from their own soil; third, to provide for said new wall a sufficient foundation; and fourth, for the foregoing purposes to enter upon defendants' premises and use the same as far as necessary. To the extent of restraining defendants from hindering them in the exercise of the rights asserted, the injunction went; but no whit beyond. As to the details and mode of execution of the work; as to the extent and duration of their entry on defendants' premises; as to the location and sufficiency of the new wall, and as to all kindred matters, the parties stood outside of the injunction, under the sole and equal protection of the law, and were alike untrammelled in the vindication of their legal rights.

If the facts alleged are true; if the legal rights asserted flow from a correct application of the law to those facts; and if the plaintiffs had grounds to apprehend that defendants would impede and hinder them in the exercise of those rights, then the injunction was properly issued and should have been maintained; otherwise it would not.

1. As to the facts, there is no dispute that plaintiffs and defendants were owners of contiguous properties having between them a wall in common; that plaintiffs desired and had actually contracted to erect a new, heavier and higher structure on his property; and that the old wall was insufficient to support the additional weight which would be imposed upon it.

2. On these facts, what rights did the law accord to plaintiffs? Let

the Code answer. Art. 681 provides: "Every co-proprietor is at liberty to increase the height of the wall held in common, but he alone is to be at the expense of raising it, etc." And Art. 682 declares: "If the wall held in common cannot support the additional weight of raising it, he who wishes to have it made higher is bound to build it anew entirely, at his own expense, and the additional thickness must be taken from his property."

The foregoing Articles are literal translations of Articles 658 and 659 of the French Code.

It seems to us that these textual provisions distinctly affirm the existence of every right asserted by plaintiffs in their petition. The right to build a new and thicker wall, adequate to the support of their new structure as well as of defendants' building, at their own expense, and taking the additional thickness from their own property, necessarily involves and includes the rights to demolish the old wall, to establish a sufficient foundation for the new and thicker wall, and to disturb the defendants' enjoyment and to enter upon their property for the purpose and to the extent necessary to exercise the principal right. *Ubi aliquid conceditur, conceditur et id sine quo res ipsa esse non potest.* No other rights were asserted in the petition and with no other were the defendants restrained from interfering.

3. We have already expressed our opinion that plaintiffs had sufficient grounds to apprehend that defendants would impede or hinder them in the exercise of their rights, and it is needless to enforce it by further discussion of conflicting testimony, which, notwithstanding its contradictions, we fully believe to be sincere and honest on both sides.

Although many of the defendants' objections were undoubtedly levelled at the plan of construction proposed, yet there was never any acknowledgment of plaintiffs' rights to disturb their enjoyment or enter on their premises for any purpose without their consent; and the persistent demand for previous indemnity as a condition of such consent, implied a claim of right to that effect for which the law affords not the slightest support.

An attempt to enter the premises of which the defendants were owners and proprietors, for any purpose, however lawful, against their consent and over their protest, might well have encountered resistance and would, in any event, have been a high-handed measure; and we think the learned counsel of plaintiffs gave them sound advice in suggesting that they should put themselves under the protection of the law through the injunction proceeding.

The learned judge *a quo* has taken the view that plaintiffs' right could

not have been lawfully exercised without the previous assent of the defendants and that, this being withheld, plaintiffs were bound to resort to some competent tribunal to settle their disputed right before proceeding in its exercise.

We can discover no warrant in the law for such a doctrine. The rights conferred upon co-proprietors by Articles 681 and 682 are absolute and unqualified; and when a right is conferred without qualification, its exercise, in absence of express provision to that effect, is not subject to any condition of consent by other persons; and authority conferred by law is amply sufficient without the necessity of obtaining additional authorization from a court. The possessor of such a right is free to exercise it and if resistance thereto is made or threatened, he has need of no other judicial assistance except that invoked in this case to restrain and prevent such interference. See Pierce vs. Musson, 17 La. 394; Dorville vs. Amat, 6 Ann. 566; Gettenworth vs. Hedden, 30 Ann. 30.

The Codes of Louisiana and France both contain the following article: "Neither of the two neighbors can make any cavity within the body of the wall held by them in common, nor can he affix to it any work without the consent of the other, or without having, on his refusal, caused the necessary precaution to be used, so that the new work be not an injury to the rights of the other, to be ascertained by persons skilled in building." R. C. C. 685; C. N. 663.

The French Code of Procedure contains certain special provisions to carry this article into effect by judicial proceedings, but although there are differences of doctrinal opinion on the point, the French Court of Cassation has repeatedly held that the article is not applicable to the cases of raising or reconstructing the wall in common as provided in R. C. C., Articles 681 and 682, and the corresponding Articles, 658 and 659 of the French Code; that high tribunal deciding that the rights granted by those articles are absolute and subject to no other conditions than those contained in the articles themselves; and that the co-proprietor desiring to exercise them "is not bound to obtain in advance the consent of the neighbor, or, on his refusal, to cause a settlement by experts of the measures necessary to prevent the new works from doing injury: to this case Article 662 C. N. (R. C. C. 685) has no application, that only providing for the case of cavities and attachments to the body of an existing wall." Cass. 18 April, 1866, p. 66, 1175; Cass. 11 April, 1864, p. 64, 776; Cass, 18 August, 1874, p. 74, 1192; Paris, 8 July, 1858, p. 58, 881; Toulouse, 22d Nov., 1864, p. 65, 462; 5 Duranton No. 335; 7 Laurent No. 559.

We find no more merit in the ground taken by the district judge that

the right asserted by the plaintiffs was excessive because it was an exaggeration of the servitude belonging to him. This is based on the ground that plaintiffs' property adjoining that of defendants' consisted of two lots between which, in their old building, there existed a dividing wall which supported the adjacent structure 'farthest from defendants, so that the party wall between defendants and plaintiffs only owed a servitude in favor of the lot immediately adgacent and none in favor of the other; and that, hence, plaintiffs had no right to throw upon that wall the support of a building embracing both their lots. Certainly there is no law forbidding an owner from erecting one building on two lots. If plaintiffs' lots had been vacant, they would have had the right to construct such a building and to use the party wall for its support, and we can see no reason why the failure to exercise the right in this manner originally should operate any forfeiture of it.

For these reasons, we hold that plaintiffs' injunction was properly issued and that there is error in that portion of the judgment appealed from which dissolved it.

## II.

The successive reconventional demands of defendants embrace a variety of complaints and of reliefs—some of the latter so radical as to require an entire demolition and reconstruction of the party wall which has been built by plaintiffs.

This demand is based chiefly on three grounds, which will be discussed successively, viz:

1. Defendants claim that plaintiffs have violated their rights of property, without warrant of law, by extending the foundation of the new wall on their land beyond nine inches and beyond the width of the old foundation.

This contention is based on defendants' construction of Articles 675 and 682 of the Code. The Art. 675 reads: "He who first builds in the cities and towns, or their suburbs, of this State, in a place which is not surrounded by walls, may rest one-half his wall on the land of his neighbor, provided he builds with stones or bricks at least as high as the first story, and not in frame or otherwise; and provided the whole thickness of this wall do not exceed eighteen inches, not including the plastering, which must not be more than three inches."

Article 682 has already been quoted, and it obliges the co-proprietor who requires a higher and thicker wall to take "the additional thickness" entirely from his own property.

Hence, say the defendants, the only warrant which the law gives to

one proprietor to invade the property of his neighbor for the purpose of establishing a wall originally is limited to the extent of one-half of an eighteen inch wall, or nine inches, and that if he wishes to build a thicker wall he must take all the additional soil required from his own estate; and, they add, that these provisions, being in derogation of the rights of ownership, must be strictly construed and must not be extended beyond the very letter of the law.

We concede that these provisions are to be strictly construed; but such strictness cannot be carried to the point of attaching an impossible meaning to the law or rendering it practically nugatory.

We might assume as self evident two physical facts, both of which are, however, fully proved in this record, viz: First, that in this city, and in most portions of this State, a wall, in order to support the weight of buildings, must necessarily be provided with a foundation considerably wider than the wall itself; second, that in order to secure the benefit of the foundation the wall must rest upon its *centre*.

We are bound to assume that the Legislature was aware of such facts and legislated with reference to them.

Hence when the Code authorized the proprietor to rest one-half of an eighteen inch wall on the land of his neighbor, it necessarily includes authority to rest such wall upon the *centre* of a foundation adequate to support it and, therefore, extending a greater distance upon the land of each.

So in the case arising under Article 682, when the co-proprietor is authorized to replace the old wall in common by a new and thicker one, he is required to take the "additional thickness" of the wall from his own estate; but he is still authorized and bound to rest the new and thicker wall upon the centre of an adequate foundation, and as a thicker wall requires a proportionately wider foundation, this necessitates a further equal extension of the latter on the land of each proprietor.

To hold that the entire additional thickness of the foundation must have been taken from plaintiffs' land, taken in connection with the physical necessity of resting the wall on the *centre* of the foundation, would have thrown the whole superimposed wall entirely beyond the defendants' line, and would have left nothing in community between the adjacent properties except a part of the foundation.

We have examined, in this connection, Article 684, the concluding proviso of which is so much insisted upon by defendants. That proviso has already been characterized as an obvious mistranslation of Article 661 of the French Code, which it was intended to reproduce, and has been practically nullified by this Court. Murrell vs. Fowler, 3 Ann. 166.

It is, indeed, so absurd and so incongruous that it is difficult to see how any other view could be taken of it. The article deals with the rights of a " proprietor adjoining a wall;" but it is clear that if the foundation is laid entirely upon one estate, the wall must necessarily be wholly removed from the contiguous estate, and the proprietor of the latter would not *adjoin* such wall at all, and could not have the right to invade his neighbor's estate to reach the wall and make it common. The right of a proprietor to maintain exclusive ownership of a wall built entirely within his own line and away from that of his neighbor and not invading the latter's property even in the foundation, seems too evident and fundamental to permit it to be frittered away by an accidental blunder of expression resulting from a mistranslation of the provision of the French law intened to be reproduced. But it might suffice to say that, in any event, the article applies to an entirely different case from those arising under Articles 675 and 682, and is entitled to no weight in construing the latter.

We conclude, therefore, that the plaintiffs had the legal right to extend the foundation equally on either side of its centre to the extent necessary to make it sufficient to support their new and thicker wall. It cannot be reasonably urged that the foundation is unnecessarily wide, for one of the most serious complaints is that, even with its present width, it is inadequate to sustain properly the weight of the superincumbent wall.

2. Defendants urge that plaintiffs have exceeded the rights invested in them by law because they have used certain wooden beams in the construction of the foundation, in violation of the proviso of Article 675, which reads : "provided he builds with stones or bricks at least as high as the first story, and not in frame or otherwise."

The wall and the foundation proper are built entirely of brick, and the heavy wooden timbers were used only to form a firm and smooth basis for the foundation. Their use for this purpose is common and approved by expert opinion, and it no more violates the proviso above quoted than would the driving of wooden piles for the same purpose, which is the measure which defendants themselves contend should have been adopted.

3. The final ground is that the wall constructed by defendants is so radically and irremediably vicious and unfit to serve the purpose of supporting the building of defendants, that its demolition and proper reconstruction is the only relief adequate to secure defendants' rights.

There is no doubt that plaintiffs were bound to replace the old party wall which they demolished, by a new one sufficient to support the

building of defendants; and that the wall actually constructed has not thus far served that purpose. But the evidence in the case does not satisfy us that the injury done to defendants by the defect in the wall cannot be sufficiently repaired by a proper allowance of damages.

In pursuing the plan of construction adopted, plaintiffs acted under the advice of competent architects and builders, and, although defendants objected, they never resorted to the remedies allowed by the Code for the stoppage or prevention of the erection of new works. Rev. C. C. B. II., Title VI.

The only judicial interference they ever invoked during the progress of the work was by a rule taken in this case, which did not suggest any stoppage or prevention of the work, but only asked for an increase of the injunction bond as security for resulting damages, and even this rule was never pressed to trial but remains to this day without action.

Under the view we have taken of the scope and purposes of the injunction, these remedies were open to defendants, and after thus permitting the construction to be completed without molestation, the case would have to be an extreme one which would justify so heroic a remedy as the destruction of the work. We are not satisfied that such a remedy is at all necessary. The wall has proved to be a sinking wall, undoubtedly injuring defendants' building; but it has not prevented its occupancy and enjoyment. It has always been rented at full rates, and the injury is susceptible of reparation in damages. It may well be hoped that the future sinking of the wall may be arrested and may perhaps cease altogether.

Various other amendments of the judgment appealed from are prayed for by defendants. We have considered them, but with the simple statement that they do not meet our approval, we may dismiss them all except that for the increase of damages, which, on the other hand, the plaintiffs claim should be reduced.

The settlement of the questions here involved will be promoted by a succinct enunciation of the general principles by which the rights of the parties are governed.

In demolishing the old and building the new party wall, under the conditions fully proved in this case, plaintiffs exercised an absolute right conferred upon them by the law. Under the maxim *neminem lædit qui jure suo utitur*, they were not bound to indemnify their neighbor for any inconvenience or injury necessarily occasioned by the exercise of the right. Such a work must of necessity incommode the neighbor. It cannot be prosecuted without an entry upon and partial occupation of his premises. It must disturb his enjoyment and that of his tenants. It

may give ground for the annulment of his leases or for a diminution of rents. It may prevent the renting of his property. It may injure him in many ways. But so long and in so far as these injuries are inseparable from the exercise of the right, the neighbor is bound to submit to them and can claim no indemnity therefor.

Such is the well settled jurisprudence of France under like codal provisions. 5 Duranton, No. 331; 11 Demolombe, No. 406; 2 Aubry & Rau, § 222; 1 Pardessus, No. 174.

Considering that in the exercise of his right the proprietor, who demolishes and reconstructs the party wall, acts exclusively in his own interest and for his own advantage, and against the wish and interest of his neighbor, equity might well question the justice of imposing upon the latter alone the burden of such serious damage and inconvenience; and, indeed, such eminent jurists as Toullier and Laurent impose strong limitations upon the broad doctrine above enunciated. 2 Toullier, p. 391; 7 Laurent, No. 562.

They are overborne, however, by the vast weight of doctrinal and judicial authority, as well as by correct principle; because, however just the limitations, it was for the law-maker to impose and define them, and, not having done so, courts cannot supply the defect.

The judicial duty in such a case was never better defined than by the court over which one of the defendants so ably presided: "It suffices for us to say that, when statutes are free from ambiguity and absurdity, we are not called upon to investigate their expediency. Under a government of written laws, the judiciary is but the interpreter of the legislative will. The reform of the law, the redress of public grievances flowing logically from existing statutes, are high prerogatives which belong to the legislative domain." Johnson vs. Bloodsworth, 12 Ann. 702.

But, on the other hand, plaintiffs are responsible for every exaggeration of these necessary damages, which, by any diligence, they could have prevented. They were bound, by every means in their power, to reduce to a *minimum* the injury and inconvenience occasioned to their neighbor; to occupy his property to the least extent and for the shortest time consistent with the exercise of their right; and to hasten, by all practical means, the completion of the wall and the restoration of the neighbor to the full enjoyment of his property.

They were, moreover, bound, at their peril, to replace the neighbor, at the end of the work, in a position equal in every respect to that which he occupied in the beginning, and to furnish him a wall fit and adequate to support his building without injury.

The considerations already developed indicate the strictness with which courts should enforce these obligations. These obligations have not been fulfilled in this case.

Defendants were deprived of the full enjoyment of their property for nearly ten months at a proven loss of rent of $220 per month.

We are perfectly satisfied that this was an unnecessarily long time; that it was consumed only because plaintiffs, consulting their own interests rather than their duty to defendants, chose to carry up their building as a whole; and that they might well have advanced the party wall much more rapidly and completed it to the height of defendants' building in, at most, one-half the time, without subjecting themselves to any inconvenience or injury which they were not bound to incur for the benefit of their neighbor.

We, therefore, hold them liable for five months' rent, or eleven hundred dollars. The wall which was constructed proved to be a sinking wall. It began to sink immediately after its completion and had continued to decline gradually, though at a diminishing rate. While this sinking, being approximately equal on all sides, has not greatly injured their own building, it has been very injurious to the adjoining buildings.

From the moment that defendants recovered possession of their property, they have been subjected to a succession of annoyances and repairs. Their walls have been cracked; at one point their building was wrenched from the opposite adjoining wall in such manner as to be dangerous and to attract the attention of the city authorities; window-sills have been broken; doors have fallen out of plumb; plastering has been continuously breaking and falling; floors have been detached from the walls. Defendants have had no peace from the complaints of tenants and have been subjected to the necessity of constant repairs. These have cost an actual outlay of $383.

But the repairs done are mere patchwork. Their patched-up building is not what it was before these dilapidations occurred. To restore it to its previous condition; to replace cracked walls by sound walls; to straighten and repair its woodwork; to readjust its lines and levels, would involve a large and expensive work of reconstruction requiring time and necessitating additional loss of rent.

Another element of damages arises from the inferior value of this sinking wall. Almost the only compensation which the law assures to the proprietor whose wall is demolished under Article 682, for the inconvenience and damage to which he must submit, is that he becomes the half owner of the new and thicker wall to the height of the old one, without cost. If the new wall is substantially and fitly constructed, as

he has a right to require, this is a considerable benefit, of which he cannot be deprived, without reparation, by the fault of the neighbor in putting up a wall which, owing to its sinking, is of less value for present or future purposes.

We need not affix special valuations to each element of damage; we do not pretend to be able to render exact justice in such a case. The district judge has fixed the sum of four thousand dollars as the measure of actual damages suffered by defendants with a non-suit to all claims for prospective damages.. While he has, doubtless, allowed some items which we disapprove, he has ignored others which we consider proper. On the whole we believe he has, 'in the amount allowed, done substantial justice. The basis of estimation is too uncertain to justify us in increasing it; but we feel safe in holding that adding to the specific items above mentioned the damages arising from the other causes indicated, the damages suffered by defendants amount to at least the sum awarded by the judge a quo.

It is, therefore, ordered and decreed that that part of the judgment appealed from which rejects plaintiffs' demand and sets aside the injunction be annulled, avoided and reversed, and that there be non-judgment in favor of plaintiffs on their principal demand and perpetuating the injunction ; and that in other respects the judgment be affirmed, defendants to pay the costs of the principal demand in the court below and plaintiffs to pay those of the reconventional demand, defendants and appellees to pay costs of appeal.

ON APPLICATION FOR REHEARING. ·

FENNER, J. We think it sufficient to say that the damages allowed by us cover all specific damages upon which evidence was taken in the lower court up to the closing of the testimony.

Rehearing refused.