96 So.2d 48

Dr. James M. CIARAVELLA

v.

Dr. Robert E. GILLASPIE.

No. 43352.

May 6, 1957.

Rehearing Denied June 10, 1957.

Clarence F. Favret, Clarence F. Favret, Jr., New Orleans, for defendant-appellant.

Henican, James & Cleveland, Murray F. Cleveland, Arthur C. Reuter, New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

The plaintiff, Dr. James M. Ciaravella, and the defendant, Dr. Robert E. Gillaspie, are the owners of adjacent lots in the City of New Orleans in Square No. 520 of the First District. Plaintiff's lot is on Banks Street at the corner of South Johnson Street, and defendant's lot also fronts on Banks Street. Defendant Dr. Gillaspie has

appealed to this court from a judgment of the district court which granted to plaintiff Dr. Ciaravella a permanent injunction ordering the defendant to demolish and remove a wall on the South Johnson Street side of a building constructed by him on his lot. The district court found that the wall encroached upon the lot owned by plaintiff and did not meet the requirements of the Building Code of the city for a party wall.

During the trial of this case there were introduced and filed in evidence three different surveys of the line separating the lots, designated as the Gandolfo, Orr, and Seghers surveys. These surveys disclose that there is a difference in the location of the line at the front of these lots where it strikes Banks Street of one-eighth of an inch as between the Orr and Gandolfo surveys, and one-half of an inch as between the Orr and Seghers surveys. At the rear of the lots the difference is a little greater, but even there the difference is inconsequential. Since this is not an action in boundary, we are not called upon to determine which survey is correct. In any event, under all of these surveys the wall 12 inches in width constructed by defendant rests on the dividing line and encroaches to some extent on plaintiff's lot. For the purpose of these proceedings the trial judge accepted the Orr survey, and we cannot say he erred. The wall constructed by defendant, according to testimony of surveyors in the record, has its center on the boundary established by the Orr survey. Defendant does not contend that the wall constructed by him does not encroach upon plaintiff's property, but says he constructed it as a party wall.

There is a servitude imposed by law which, under Article 675 of our Civil Code, permits that "He who first builds in the cities and towns * * * of this State, in a place which is not surrounded by walls, may rest one-half of his wall on the land of his neighbor * * *."

The City of New Orleans has adopted a Building Code pursuant to the authority vested in it by Act 76 of 1910, R.S. 33:4751, which reads: "The governing body of any municipality of one hundred thousand or more inhabitants may adopt ordinances relating to the construction * * * of buildings, structures, walls, and party walls * * *. Such ordinances shall supersede any laws existing prior to 1910."

It is plaintiff's contention that the wall in question is a non-conforming wall, or not a party wall, under the Building Code of this city.

In June of 1953 Dr. Robert E. Gillaspie submitted to the Department of Safety and Permits of the Division of Regulatory Inspections of the City of New Orleans plans and specifications for a one-story doctors' office building to be constructed on his lot adjacent to plaintiff's lot. The plans thus submitted delineated, and the

specifications detailed, a party wall on each side of the building 12 inches in thickness and centered on the boundary line, one-half of the width of each wall to rest on Dr. Gillaspie's lot and the other one-half to rest on the neighboring lot. The plans denoted these walls as party walls and contemplated that each wall would be constructed of concrete slag blocks. In due course the Department of Safety and Permits approved the plans, and a permit was granted to Dr. Gillaspie to construct the building according to these plans. Under the authority of this permit construction was begun, and the building was completed in the early part of 1954 for a cost of approximately $42,000.

About a year later, Dr. Ciaravella acquired the adjacent lot in a deed which, after describing the lot number and the square in which it was situated and the lot's width and depth, provided: "All in accordance with survey of Adloe Orr, C. E., dated September 4, 1950, a blueprint copy of which is annexed to act of Elmer D. Flanders, Notary Public, dated November 3, 1950."

After acquiring the property Dr. Ciaravella employed the services of a licensed architect to prepare plans and specifications for the construction of a one-story doctors' office building. According to these plans and specifications, the wall of Dr. Gillaspie's building along the property line between the two lots was to be used as a party wall to which Dr. Ciaravella's building was to be tied and on which it would bear. When in due course Dr. Ciaravella's plans and specifications were submitted to the Department of Safety and Permits, the department refused to issue a permit for the construction of a building using defendant's wall as a party wall—in spite of the fact that it had previously approved the wall as such—because the wall did not meet the requirements of the Building Code for a party wall. This wall, 12 inches in width and constructed of concrete slag blocks, was not in compliance with Article 2937 of the Building Code which provides that "Party walls and fire walls of other than solid masonry must be faced with at least four inches (4″) of brick on each side, bonded to the backing as required, and must have a thickness of at least four inches (4″) greater than specified for solid masonry bearing walls".

When the department denied Dr. Ciaravella the permit sought, he instituted the present suit, alleging that the wall in question encroached on his property, and that it was not a party wall because it did not meet the requirements of a party wall of the city Building Code in that it was constructed of concrete slag blocks without four inches of brick on each side.

While the suit was pending—no doubt because the department had approved the wall as a party wall in its permit issued to Dr. Gillaspie but had denied a permit to

plaintiff on the ground that the wall was a non-conforming party wall—, the matter was brought before the Board of Building Standards and Appeals, a board functioning under the authority of the New Orleans Building Code and composed of five members—a state registered architect, a state registered civil engineer, a member nominated by the Louisiana Rating and Fire Prevention Bureau, a licensed general contractor, and a qualified professional electrical or mechanical engineer. Under Article 402(3) of the Building Code, this board has the power and duty " * * * to vary or modify the application of any of the regulations or provisions of such articles relating to the construction or alteration of buildings or structures or the use of land so that the spirit of this Code shall be observed, public safety and welfare secured and substantial justice done".

After reviewing the case, the board approved the wall as to stability and fire resistance and suitability as a party wall sufficient to support both one-story buildings, and having found these facts, it waived the requirement for brick facing, as evidenced by excerpts from the minutes of the meeting of the board held on April 4, 1956. Furthermore, according to the testimony of the chairman of this board, "the functions of a party wall would be adequately fulfilled by this particular wall". This witness further stated that the fire resistance of this wall was ample according to the code, that a wall of 12-inch slag blocks furnished the proper fire resistance, and that the wall was adequate as to stiffness and structural stability.

There is no conclusion that can be drawn other than that the superstructure of the wall, as distinguished from the foundation, had been approved as a party wall by the body which had power to make such approval. According to plaintiff's own admission he was fully acquainted with this fact. He himself says that he was informed by Mr. Haller, Chief Planning Examiner in the Department of Safety and Permits, that a permit would be issued for the construction of his building upon application for it.

Soon afterwards plaintiff caused an excavation to be made to inspect the foundation of the wall. This inspection revealed that Class 9 piles had been used in preparing the foundation for the wall instead of Class B piles as called for by Dr. Gillaspie's plans and specifications, and that with the Class 9 type of piling the foundation was not adequate to support the wall as a party wall. Under the Building Code of the City of New Orleans Class B piling is required for a party wall instead of the type used by defendant.

Although the inadequacy of the foundation and its non-conformity with the Building Code were not alleged in plaintiff's pleadings, the trial judge permitted him at

the trial to adduce evidence showing these facts. The defendant then with the consent of the court filed a supplemental and amended answer in which he conceded that the foundation was not in accord with the Building Code requirements but alleged that he had been totally unaware of this and prayed that he be afforded the opportunity before the issuance of a mandatory injunction to strengthen the foundation in order to make it comply with the requirements of the code. In connection with this answer, it was brought out at the trial that Class 9 piling was substituted for the Class B piling specified in defendant's building plans at the suggestion of the pile-driving contractor, who told defendant that the Class 9 piling would provide an adequate foundation and yet would be more economical. There is nothing to show that Dr. Gillaspie had any intention of violating the Building Code when he accepted the suggestion for the substitution, and we think he was entirely in good faith.

When the condition of the foundation of the wall was called to the attention of the Department of Safety and Permits, it revoked the permit previously issued to Dr. Gillaspie. However, upon the suggestion of this department, defendant immediately obtained from a reputable engineering firm plans and specifications for strengthening the foundation of the wall by means of what is commonly called batter piles. These plans and specifications were submitted to the department and were found acceptable, and a permit was issued to Dr. Gillaspie to proceed with the work.

The record shows beyond question that when the foundation of the wall has been strengthened according to this plan, the wall will prove adequate as a party wall in every respect. In fact, Mr. Haller, of the Department of Safety and Permits, testified that these plans were good and adequate, and that when the foundation work was completed, a permit would be issued to plaintiff Dr. Ciaravella to construct his building using the wall as a party wall. In other words, if this work is completed, the wall in every respect will be an adequate party wall approved both as to superstructure and as to foundation. Plaintiff's own architect concedes that if the work is done pursuant to the plan, it will correct the under-design of the existing piling foundation.

Appellant in this court, Dr. Gillaspie, concedes that the foundation of the wall needs strengthening, and there is no question that he is ready and willing to proceed with this work under the plan approved by the department for this purpose. Here he asks only a stay of the mandatory injunction until such time as the work of strengthening the foundation can be performed.

This is an equitable proceeding, and the remedy which plaintiff seeks—that defendant be ordered to partially destroy a new

building erected by him at a cost of $42,000 by tearing down one of its walls—is a harsh one. We concede, however, that under the facts of this case he has a right to have the wall torn down if it is not a legal party wall, or such a wall as would be recognized as a party wall by the authority whose duty it is to enforce the Building Code of this city. Nevertheless, in the interest of equity and justice we think the defendant should be given an opportunity to strengthen the foundation of the wall according to the plans and specifications which he has had prepared and which have been approved by the department. Moreover, for the purpose of completing the work according to these plans he should have ingress to plaintiff's property. Failure to provide defendant with right of ingress would, in effect, be denying him the right which he has under the law to construct a party wall. See Heine v. Merrick, 41 La.Ann. 194, 5 So. 760, 6 So. 637. The work to be done in strengthening the foundation is to be entirely at defendant's own expense. Nonetheless equity and justice require that defendant should be allowed only a limited time in which to have the remedial work done. We think a reasonable time would be a period of 60 days from the date on which plaintiff's property is made available to defendant for ingress to perform the corrective work on the foundation. The decree that we are rendering here will permit the plaintiff to proceed in due course with the construction of his building according to his plans and specifications using the wall in question as a party wall—exactly as he stated he wanted to do in the first place.

Under the conclusion we have reached, it will be necessary to reverse the judgment of the lower court which issued a mandatory injunction ordering the defendant to demolish the wall. We shall, however, remand the case to the district court, reserving to plaintiff the right to apply for, and to have issued, in these proceedings a mandatory injunction if he can show that the work of correcting the foundation has not been completed within the allotted time or can show that, even though it is completed, he is unable to obtain a permit from the city for the construction of the building on his property solely because the wall to which his building is to be tied is not approved as a party wall.

For the reasons assigned the judgment issuing the mandatory injunction is reversed, annulled, and set aside, and the case is remanded to the district court for any further proceedings that may be necessary. All costs incurred to date are to be paid one-half by plaintiff and one-half by defendant.

PONDER, J., dissents.

HAMLIN, J., recused.