## No. 5409.

### GEORGE L. GETTWERTH vs. MRS. E. HEDDEN.

Where the owner of a vacant lot in the city of New Orleans, who desires to erect a building of certain dimensions on the lot, finds that the wall of his neighbor's house, which is built up to the boundary line of the lot, is so thin that the weight of his prospective building, although erected within the bounds of his own lot, would destroy his neighbor's house, he has the legal right to take down the neighboring wall, and replace it by one strong enough to support the building he shall erect. Such reasonable care must be observed by him however, as will render the inconvenience and loss to his neighbor as small as practicable; and his care must be proportioned to the risk of loss and inconvenience to his neighbor that his undertaking may occasion; and he is liable for whatever actual damage his neglect to take such care may entail.

A party can not be held liable for the value of property, stolen on account of its being exposed to theft by an act of his which he had the legal right to do.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier, J.*

*Braughn & Buck* for plaintiff and appellee.

*Singleton & Browne* for defendant.

The opinion of the court was delivered by

MARR, J. This is an action for damages, which involves no disputed question of law. The testimony is voluminous, and somewhat conflicting, and, without analyzing it in detail, we shall state, in general terms, the material facts which we consider proven.

Gettworth leased from McCarty, for a term of four years, ending September 13, 1876, a house and premises which he fitted up for a confectionery and restaurant, with counters, shelves, soda fount, oyster stand, bar and rooms for private supper and dinner parties. His family occupied the upper part, the second story.

Mrs. Hedden owned the adjoining lot, on which she desired to erect a three-story brick building. The house occupied by Gettworth was built entirely on McCarty's property; and the wall extended up to the line of Mrs. Hedden's property. At her request the City Surveyor examined this wall, and in a report, in which he gives its dimensions, he states that it would not support a three-story building, and that, if Mrs. Hedden should build entirely on her property the weight of her house would destroy McCarty's. It was necessary, therefore, to demolish this wall and to rebuild it with the requisite thickness.

On the 14th Nov., 1872, the builder, Evans, employed by Mrs. Hedden to superintend the work, gave notice to Gettworth that he would be ready, in a few days, to commence taking down the wall, and requested him to move his goods away from it.

Precisely at what time the work was commenced the record does not show; but about the middle of December the premises were in such a condition that Gettworth's wife and children could not lodge there, and slept elsewhere for about seven weeks. The counters and shelves were taken out: the interior of the house was exposed to the weather: the work was retarded, sometimes by the heavy rains, sometimes for lack of materials, sometimes by reason of the absence of Evans, who was sick, sometimes because it was so cold that the mortar was frozen, and the workmen could not lay the brick. It was a cold winter, with frequent and heavy rains; and the business of Gettworth was greatly interfered with for want of the use of a fireplace, and consequent inability to make his customers comfortable while taking meals and refreshments.

The testimony is not satisfactory as to the precise time during which these annoyances and inconveniences continued; but we gather from the testimony of the painter employed by Gettworth after the wall had been built and papered, that the counters and shelves were replaced in March, 1873.

Gettworth brought this suit on the seventh of March, 1873, to recover $2212 25 for damages, claimed under these heads :

First—$1000 for actual loss of business, at $10 per day, from December first to March tenth.

Second—$1000 for further damages, "actual, punitive, and exemplary," for loss of customers, decrease and depreciation of business, and the annoyance, trouble, suffering, and exposure to which plaintiff and his family were subjected.

Third—$212 25, value of a lot of liquors and other articles stolen from the premises on the twelfth of December, 1872, the thieves having gained admittance and egress through the openings and exposures left by defendant.

The judge of the District Court, an upright, conscientious magistrate, now no more, who evidently considered the case very carefully, rejected the damages claimed under the second and third heads ; and awarded to plaintiff $550 : and from this judgment Mrs. Hedden appealed. Gettworth died pending the appeal ; and his administratrix, made a party in this court, asks us to amend the judgment so as to allow the full amount sued for.

So far as the claim for "punitive and exemplary damages" is concerned, but little need be said. Mrs. Hedden exercised an unquestioned legal right in demolishing this wall, and replacing it with one capable of sustaining the structure which she erected. The exercise of this right is of constant occurrence in all cities ; and it is so universally known that the owner of the property subject to it and his lessee must be considered as having notice of its existence, and that it might be exercised at the pleasure and convenience of the adjoining proprietor. If the lessee should be subjected to inconvenience he might claim of the lessor a proportionate reduction of the rent. Dorville vs. Amat, 6 An. 566 ; or if the premises should become untenantable, the lessee might dissolve the lease. Coleman vs. Haight, 14 An. 564.

No improper motive, no intentional wrong can be attributed to Mrs. Hedden or her superintendent ; and while it is possible, in most cases, to avoid serious injury to the neighbor, whose wall is thus taken down, it is not possible, in any case, to prevent great annoyance and inconvenience, personally, to the family occupying the house, and interruption of the business conducted in it, by making it less inviting and accessible to customers.

The proprietor who exercises this right is bound to take every precaution that prudence and a due regard for the rights and comfort of the neighbor require ; and if he fails to do this,

Gettwerth vs. Hedden.

he is responsible for such actual loss and damage as the neighbor has suffered which might have been avoided.

As to the alleged loss by stealing, Gettworth knew, a month before this happened, that the wall would be demolished at an early day; and that the premises would, necessarily, be very much exposed. The articles alleged to have been stolen were in a building which the witnesses call a shed. Gettworth was on the premises and knew the full extent of the exposure; and it was not prudent, it was in legal contemplation fault, contributory fault, on his part, to leave such portable property exposed to thieves and plunderers. He should have moved it to some other better secured part of the premises; or to a place of safety elsewhere, if no part of the premises was safe. What thieves could carry away in one night, without waking the owner, who slept on the premises, without attracting the attention of the police, he could have placed beyond their reach without great expense or labor.

We think it was not prudent to have such work undertaken in the winter. It could have been done in the summer and early autumn much more expeditiously, and with far less risk of personal inconvenience to the occupants of the house. The discomfort of exposure in warm dry weather is trifling compared to that which results necessarily from like exposure in the cold, wet weather of winter. The interruption of business in summer, when the population is greatly diminished, is of small consequence compared to similar interruption from December to March, inclusive. No law certainly, restricts the proprietor as to the season at which he shall exercise his legal rights with respect to his neighbor's wall; but when he chooses to exercise them at a time, and under circumstances which greatly increase the risk of injury to the neighbor, he is bound to use extraordinary precautions, in accordance with the increase of the danger.

The testimony satisfies us that this work might have been done in such a manner as to have caused Gettworth no serious injury. It was the work of a few days, when the bricklayers could get at it, to run up the wall to the height of Gettworth's house. As soon after this as was practicable the house should have been restored, as nearly as possible, to its original condition. If this was ever done it was not earlier than March, because the shelves and counters were replaced in that month, and there was still some other work to be done at that time.

It was possible for Evans, the superintendent, to have had all his materials ready, and on the spot, so that no delay would

have occurred for want of them; and to have secured the interior of Gettworth's house from exposure to the weather, by well-constructed partitions, to supply the place of the wall to be demolished until the new one could be completed. By means of such temporary partitions families are enabled to occupy houses which would be otherwise untenantable while one of the walls is being demolished; and the business conducted in them suffers but little more interruption than would result, ordinarily, from the erection of an independent building alongside.

We think there was such fault on the part of Evans, whether from error of judgment, or want of skill and experience, or from some accidental circumstances not anticipated and not provided against, as imposes liability on defendant for the actual loss and damage suffered by Gettworth, which might otherwise have been avoided.

It is difficult to estimate actual damage in a case like this. Gettworth had a good business; and it was in great part broken up for from two and a half to three months. He estimates his loss at $10 a day. Whether the judge of the District Court arrived at the $550 allowed by him, by fixing the time at fifty-five days, at $10, or at a longer time and lower rate we do not know; but there is no testimony in the record which requires or authorizes us to disregard his estimate, or to fix the damages at a less amount.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended so as to substitute the name of Mrs. Diana Sachsen, Administratrix, for that of George L. Gettworth, plaintiff, and, as thus amended, that said judgment be affirmed with costs.