335 So.2d 751 (1976)
CANE RIVER NEEDLE ART et al., Plaintiffs-Appellees,
v.
REON, INC., et al., Defendants-Appellants.
No. 5468.
Court of Appeal of Louisiana, Third Circuit.
July 7, 1976.
Rehearings Denied August 18, 1976.
*752 Kelly & Ware by Richard Ware, Natchitoches, for defendants-appellants.
G. F. Thomas, Jr., Natchitoches, for plaintiffs-appellees.
Before CULPEPPER, PETERS and HOOD, JJ.
PETERS, Judge ad hoc.
This suit arose out of the destruction of a party wall that existed between a building leased by plaintiffs and one owned by defendant Reon, Inc.
Plaintiffs Wilhelmina D. Jolley and Sally P. Griffin, partners in Cane River Needle Art, leased a building from W. D. Carter for operation of a crewel and needlepoint shop. Carter had purchased the property from W. H. Franklin, Jr. in 1969 and the act of sale recited that the "western wall of the Carter Jewelry Store (plaintiffs' premises) shall be and remain a *753 party wall between the parties hereto." At the time of the sale to Carter, Franklin retained the adjacent parcel of land along with the building situated thereon; this building was attached to the Carter building at the party wall. In 1974, Franklin sold the remainder of the property to Reon, Inc., and the act of sale from Franklin to Reon, Inc. recited that the wall between Carter's building and the building being purchased by Reon, Inc. was a party wall.
Reon, Inc. purchased the property for construction of a parking lot to serve an establishment it owned adjacent to the Reon and Carter properties. Reon, Inc. attempted to purchase Carter's property so it could tear down his building, as well as their own, and make one large parking lot. The location of Carter's building threatened to hamper the plans of Reon, Inc. so Reon, Inc. wanted Carter's building removed. Carter declined to sell his property. Reon, Inc. then proceeded to begin demolition of its building in March of 1975. James Rex Fair, president of Reon, Inc. and a defendant in this suit, contracted with Jerry Cook to demolish the building. Several days after demolition began, the workers doing the demolition discovered that the party wall consisted of only a single layer of bricks and the north and south walls of the Reon building were tied in to the party wall. The north and south walls of the Carter building were not connected to the party wall. The roof of the Carter building was attached to the Reon building in only two places. As one witness put it, the Carter building was just "tacked on" to the Reon building. The workers informed Mr. Fair they believed the roof of the Carter building would collapse if demolition of the Reon building continued.
Subsequently, Mr. Fair, Mr. Carter's attorney, and several other people inspected the buildings. Mr. Fair told Carter's attorney he felt the roof of the Carter building might fall. Carter's attorney then advised Carter he should ask his tenants to vacate the premises due to the dangerous condition of the building. Plaintiffs moved out and ceased operating their business. This occurred about the middle of March, 1975, and Fair stopped the demolition.
Nothing further was done until April, when Carter hired a carpenter to build a temporary wooden wall inside his building, about four inches east of the party wall, and plaintiffs moved back into their shop on April 22. At the end of June, demolition of the Reon building was resumed with a bulldozer and truck. At some point during the renewed demolition the party wall was struck by the bulldozer and knocked to the ground. In the course of the renewed demolition it was difficult for plaintiffs to operate their business due to frequent disturbances. The walls of their shop were shaken several times; their electrical outlets were disconnected; large beams from the Reon building were thrown into the parking area in front of plaintiff's shop; after the brick party wall collapsed, the shop became very hot because only the temporary wall remained and water flowed into the shop when it rained. Plaintiffs eventually moved their business to another location.
Plaintiffs filed suit for damages on April 15, 1975. A supplemental petition setting forth additional grounds for damages was filed on July 14, 1975. After trial, the lower court rendered judgment in favor of the partnership for $1500.00. In addition, judgment was rendered in favor of Wilhelmina D. Jolley for $2,000.00 and in favor of Sally P. Griffin for $2,000.00. The court found that James Rex Fair and Reon, Inc. were solidarily liable to all plaintiffs for these damages. Defendants have appealed.
Defendants present three contentions:
(1) That Reon, Inc. did nothing in demolishing its building that it had no legal right to do.
*754 (2) That James Rex Fair at all times acted as an agent for Reon, Inc. and therefore assumed no personal liability, and
(3) That, in any event, the lower court's award of damages is excessive.

I. LIABILITY OF REON, INC.
As the basis for its argument that it acted within its rights, Reon, Inc. relies on Heine v. Merrick, 41 La.Ann. 194, 5 So. 760 (1894). Reon points to language in the Heine opinion indicating that a co-proprietor, if he wishes to raise the height of a common wall, may disturb the enjoyment of the wall by the other co-proprietor and may enter upon the co-proprietor's premises as is necessary for raising the height of the wall. Defendant argues that a coproprietor who wishes to demolish his building which is attached to a party wall has a right to cause such disturbance to his neighbor as is necessary to achieve the demolition of his building. We have no quarrel with this argument, but find that Reon, Inc. went beyond what was allowed by law. After finding that a co-proprietor could with impunity cause inconvenience to his neighbor in rebuilding a party wall, the court in Heine went on to say this:
"But, on the other hand, plaintiffs are responsible for every exaggeration of these necessary damages, which, by any diligence, they could have prevented. They were bound, by every means in their power, to reduce to a minimum the injury and inconvenience occasioned to their neighbor; to occupy his property to the least extent and for the shortest time consistent with the exercise of their right; and to hasten, by all practical means, the completion of the wall and the restoration of the neighbor to the full enjoyment of his property.
"They were, moreover, bound, at their peril, to replace the neighbor, at the end of the work, in a position equal in every respect to that which he occupied in the beginning, and to furnish him a wall fit and adequate to support his building without injury."
We note initially that plaintiffs, although not the owners of the premises damaged, are entitled to damages for unlawful disturbance of their possession of the leased premises. LSA-C.C. 2703; Gettwerth v. Heddon, 30 La.Ann. 30 (1878); Esmile v. Violet Trapping Co., 187 La. 728, 175 So. 471 (1937). The present case is distinguished from the recent case of Desormeaux v. Central Industries, Inc., 333 So.2d 431 (3rd Cir. 1976) in which we applied the general rule that a person who suffers damage only because of his contractual relationship with the victim of a tort has no cause of action against the tort feasor. The present case is distinguished from Desormeaux in that LSA-C.C. 2703 expressly provides that a lessee has a cause of action against a third person tort feasor who disturbs the possession of the lessee.
We find Reon, Inc. failed to take any steps to minimize the damage and disturbance caused by its actions. After it was discovered that demolition work had rendered the Carter building unsafe for use, defendant did nothing whatsoever to make the building safe and habitable. Plaintiffs were forced to stay out of the building for a period of about five weeks and were only able to return because their lessor eventually hired a carpenter to build a temporary wall inside the Carter building. In July, after demolition had been renewed, defendant's contractor completely knocked down the party wall and defendant made no attempt to rebuild it. Furthermore, as already pointed out, the demolition work was done in such a way that it caused repeated disturbances to plaintiffs while they were occupying the Carter building. We feel these disturbances were excessive and unnecessary.
We therefore conclude the lower court was correct in granting judgment against Reon, Inc.

*755 II. LIABILITY OF JAMES REX FAIR.
James Rex Fair argues he did nothing in regard to the demolition work which would subject him to personal liability. He contends that in his capacity as President of Reon, Inc. he hired Jerry Cook to do the demolition work and Jerry Cook was therefore working for Reon, Inc. and any tortious conduct of Jerry Cook would render Reon, Inc., not James Rex Fair, liable.
This argument has no merit. The record reflects far more involvement by Mr. Fair than he admits. We find at the outset of the demolition, Mr. Fair took no steps to minimize the damages and inconvenience to plaintiffs. Certainly it was apparent that demolition of the Reon building, if not done properly, would cause a great deal of disturbance to the tenants of the Carter building. Yet, Mr. Fair testifed he told the contractor to tear down the Reon building up to the party wall but he gave the contractor no instructions on how this task should be accomplished. When it was discovered the party wall consisted of only one layer of bricks, Mr. Fair was advised of the dangerous situation which had been created by the demolition. He, in fact, personally inspected the premises. He knew that plaintiffs would have to vacate their building due to the danger and yet he did nothing to alleviate the hazard so that plaintiffs might be able to carry on their business. Later, when demolition was resumed, Mr. Fair, knowing the delicate condition of the party wall, allowed demolition to be resumed with a bulldozer which proceeded to completely destroy the party wall. In fact, Fair admitted he knew the party wall would collapse when the remainder of the Reon building was torn down because there would be nothing left to support it. Still, he ordered the remainder torn down in total disregard of plaintiffs' rights.
Reon, Inc. was described by Fair as an "investment type corporation for commercial and rental type properties." Fair and another individual were the sole shareholders in Reon, Inc. As already stated, Fair was president of Reon, Inc. and it appears from the record that Fair was responsible for conducting most of the business of the corporation.
Reon, Inc., as co-proprietor of the party wall, owed certain duties to plaintiffs regarding the party wall (see discussion of liability of Reon, Inc., above). It is clear from the record that Reon, Inc. delegated these duties to its president, James Rex Fair. It is equally clear that Fair, by his actions discussed in this section, breached those duties. He is therefore liable to plaintiffs for damages. Canter v. Koehring, La., 283 So.2d 716 (1973).
We conclude the lower court was correct in finding James Rex Fair liable in solido with Reon, Inc. for all damages occasioned by the reckless demolition of the Reon building.

III. AMOUNT OF DAMAGES.
Defendants contend that, even if damages are due, the disturbances caused by defendant are not such as to warrant an award of $1500 to the partnership and $2000 to each of the individual plaintiffs. We have reviewed the record and find the trial judge was within his discretion in his award of $1500 to the partnership. However, we feel the award of $2000 to each of the individual plaintiffs for their mental anguish is excessive. We therefore will reduce that award to $500 to each of the individual plaintiffs.
For the reasons assigned, the judgment of the lower court is hereby amended to award judgment against Reon, Inc. and James Rex Fair, in solido, for $500 to Wilhelmina D. Jolley and $500 to Sally P. *756 Griffin. In all other respects, the judgment of the lower court is affirmed. Costs in this court are assessed against defendants-appellants.
Amended and affirmed.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I agree with my colleagues that defendant Reon, Inc. is liable for the damages sustained by plaintiffs, and that the awards for mental anguish made by the trial court are excessive and should be reduced. I do not agree, however, that defendant James Rex Fair was negligent or that he is liable to plaintiffs for any amount whatsoever.
The evidence which tends to show fault on the part of Reon is weak, and my original impression was that defendant, as well as Fair, was not liable. I am yielding to the views of the majority as to Reon, however, primarily because the law places a heavy responsibility on the co-owner of a common wall who undertakes to demolish and rebuild that wall "to reduce to a minimum the injury and inconvenience occasioned to their neighbor." See the quotation in the majority opinion from Heine v. Merrick, 41 La.Ann. 194, 5 So. 760 (1889). See also Gettwerth v. Hedden, 30 La.Ann. 30 (1878); Bergeron v. Con-Plex, Inc., 255 So.2d 397 (La.App. 1 Cir. 1971); Mc-Kinnon v. Caddo Parish Police Jury, 262 So.2d 834 (La.App. 2 Cir. 1972); Reynolds v. Egan, 123 La. 294, 48 So. 940 (1908); Esmele v. Violet Trapping Co., 187 La. 728, 175 So. 471 (1937); Yiannopoulos, "Common Walls, Fences and Ditches: Louisiana and Comparative Law," 35 La.L.Rev. 1249, 1286.
In the instant suit I agree that Reon may have been able to hasten the completion of the demolition work a little more, and by doing so it may have reduced the "inconvenience" occasioned to plaintiffs by that work.
Defendant Fair, however, did not own the building which was being demolished, and he was not a co-owner of the common wall. He thus was not subject to the heavy responsibility which the law placed on the owner, and I do not believe that he is liable to plaintiffs for damages, either individually or as an executive officer of Reon, unless he was guilty of at least some negligence which caused or contributed to that damage. I find nothing in the record to show that Fair was negligent in any respect.
Reon had the absolute right to demolish its building. It engaged an independent contractor, Jerry Cook, to do the job, and I find nothing in the record to show that Fair ever undertook to direct Cook as to the manner in which the demolition work was to be conducted.
Cook began demolishing the building on March 10, 1975. Within three or four days thereafter, he discovered that the common wall between the two buildings was only one brick thick, and that its original construction was such that the wall could not stand alone, that it would not safely support the roof of the Carter building, and that it eventually would fall of its own accord. When that information was conveyed to Fair, he immediately ordered that the demolition work be stopped and he notified Carter of that discovery. Fair then arranged a meeting with Carter, the latter's attorney and a contractor, to inspect the building, and following that inspection, all agreed that the original construction of the wall was so defective that it constituted a danger to the occupants of the Carter building. Carter thereupon asked plaintiffs to vacate the building until a new west wall could be constructed, and he undertook to have that wall built. Plaintiffs vacated the Carter building on March 14, just four days after the demolition of the Reon building was commenced. *757 Fair instructed Cook to discontinue demolishing the Reon structure, and no further work was done by Cook in tearing down that building until June 30, 1975, long after Carter had completed the construction of a new west wall and after plaintiffs had reoccupied the building. I thing Fair did everything he could to prevent damage to plaintiffs during that period.
The contractor engaged by Carter to rebuild the west wall of his building completed his work by April 22, and plaintiffs moved back into the Carter building on that date. They continued to occupy it from that date until some time in July, 1975. The evidence convinces me that they vacated the building at that time, not because of the demolition work done by Reon, but because the air conditioning unit provided by Carter did not adequately cool the building during the summer months.
The independent contractor engaged to demolish the Reon building resumed his demolition work on June 30, 1975, and he completed that work within two or three days thereafter. A part of the original brick west wall of the Carter building fell while the last part of the demolition work was being done, and the contractor removed the rest of that wall. He did not strike or damage the new frame wall which Carter had constructed on the west side of his building. I do not find that plaintiffs were disturbed or inconvenienced during that two or three day period, except that they found some debris in their parking area on the morning of June 30. Cook's employees removed that debris immediately after plaintiffs asked them to do so. Even if plaintiffs did suffer some inconvenience, however, the evidence does not show that Fair did anything to cause or contribute to it.
In my opinion, the trial judge erred in finding defendant Fair liable, individually, for the damages sustained by plaintiffs.
For these reasons, I respectfully dissent.